IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

ARCH SPECIALTY
INSURANCE COMPANY                                                PLAINTIFF

v.                          No. 3:15-cv-223-DPM

FIRST COMMUNITY BANK
OF EASTERN ARKANSAS                                             DEFENDANT

ORDER

Did First Community Bank properly refuse to honor Arch Specialty Insurance's $300,000.00 letter of credit? That's the core dispute. The many other points are at the margin; they merit some discussion, though, because the parties have briefed them so thoroughly.

First, the real-letter-of-credit point. It makes no material difference that the Bank issued a letter of credit on its own form before issuing one on Arch's form, and that the two differ slightly. № 50-16 at 2. Nor does it matter which one Arch's agent thinks has life. № 50-18 at 15–16 (deposition pagination). The Arch form and the Bank form were two different contracts; and nothing in the record suggests that the Arch form—executed by the Bank and containing all material terms—fails as a contract. To have two partially

overlapping letters of credit is perhaps unusual (here it looks like an administrative slip-up), but it doesn't make the Arch form void.

Second, the bankruptcy points. Arch's actions in Crittenden Hospital Association's bankruptcy don't create summary judgment issues. Arch didn't violate the automatic stay by seeking payment on the letter of credit—neither the letter nor any payment were assets of the Hospital. *In re Papio Keno Club, Inc.*, 247 B.R. 453, 459 (B.A.P. 8th Cir. 2000), *aff'd*, 262 F.3d 725 (8th Cir. 2001). This is not a case, in other words, where payment on the letter would leave Arch holding money that really belongs to the Hospital. *Ibid.* Nor did Arch and the Hospital change the character of this letter by calling it "collateral." № 39-2 at 2. Arch isn't judicially estopped or barred by inconsistent positions either, because its failure to assert a claim in the Hospital bankruptcy isn't inconsistent with having such a claim. Unlike the estopped party in *Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1032–33 (8th Cir. 2016), Arch wasn't the debtor. And it doesn't matter in this case whether Arch told the bankruptcy court about the letter when it moved to lift the stay and cancel the Hospital's policy. The existence of an unconditional letter of credit between Arch and the Bank didn't control the Arch/Hospital relationship. The letter was

enforceable against the Bank, not the Hospital. Which raises a broader and decisive point: estoppel doesn't really matter anyway, because Arch can pursue this case even if it is estopped from claiming that the Hospital owes it money—the Bank must pay on an *unconditional* letter of credit regardless. *Nissho Iwai Europe v. Korea First Bank*, 99 N.Y.2d 115, 120 (2002).

Third, fraud. There's no issue on fraud by concealment either. The Bank doesn't argue that Arch had a duty to disclose. Both Arkansas and New York law require that duty underneath an alleged concealment. *Farm Bureau Policy Holders and Members v. Farm Bureau Mutual Insurance Co. of Arkansas, Inc.*, 335 Ark. 285, 301–02, 984 S.W.2d 6, 14 (1998); *900 Unlimited, Inc. v. MCI Telecommunications Corp.*, 215 A.D.2d 227, 227 (N.Y. App. Div. 1995). It's not fraud to forego a claim on a debtor in bankruptcy.

That leaves presentment—the core dispute, which is dispositive. The Arch form letter of credit embodies the Bank's promise to honor Arch's $300,000.00 sight draft drawn on the Bank. № 39-1 at 2. It requires "[t]he original of this Letter of Credit, and all amendments, if any, [to] accompany all drawings ... hereunder." *Ibid*. The letter answers to New York law, which requires strict compliance with the letter's terms. N.Y. U.C.C. Law § 5-108(a).

Arch tried twice to present the letter for payment. In December 2014, Arch sent the Bank a sight draft and a copy of the letter. *№ 39-4 & 39-5*. Arch said it would present the original letter in person if the Bank agreed to honor the draw request. *Ibid.* The Bank refused to pay. It explained its refusal in a January 2015 letter, which asserted three defects in the presentation—fifteen business days after that effort. *№ 49-1 at 34*. Then, in April 2015, Arch's agent presented the letter in person. *№ 39-9 at ¶¶ 5–6*. The agent didn't present a sight draft or any other documents with the original letter. *№ 50-18 at 15, 21–22* (deposition pagination).

The Bank says neither presentment strictly complied with the letter's terms: the 2014 attempt lacked the original letter; the 2015 attempt lacked a sight draft. Arch returns fire on three fronts. First, Arch says, even if each attempt failed alone, they succeeded together. The sight draft arrived in December 2014, and the original letter in April 2015. But Arch cites no authority for a three-and-a-half-month-long presentment. And its January 2015 letters to the Bank threatened legal action for improper dishonor, belying the new long-presentment argument. *№ 49-1 at 33, 35–36*.

Arch's second argument gains some ground: strict compliance doesn't mean slavish compliance. One court recently blessed a presentment that included a copy — rather than an original — of an amendment to a letter of credit. *Ladenburg Thalmann & Co. Inc. v. Signature Bank*, 128 A.D.3d 36, 38, 44 (N.Y. App. Div. 2015). But that case wasn't a movement away from strict compliance, as Arch suggests. It was a court feeling out the doctrine's edges. Looking at particular facts — a duplicate amendment produced by the bank, supported by an affidavit of authenticity, covering only an expiration date, and which had been superseded by later amendments — the court saw strict compliance. *Ibid*. Presentment of that copy, the *Ladenburg Thalmann* court said, wouldn't mislead the bank to its detriment or compel any inquiry into the underlying transaction. *Ibid*.

This case is different. Arch omitted not a superseded amendment, but the original letter itself. In its place Arch offered not a Bank-verified copy, but one — as far as the Bank knew — of unknown provenance. "One manifestation of the strict compliance rule is the long-standing practice among issuers to require original documents unless the letter of credit stipulates otherwise." *Western International Forest Products, Inc. v. Shinhan Bank*, 860 F. Supp. 151, 154

(S.D.N.Y. 1994). That the Bank could see the original letter after committing to honor the sight draft isn't enough. Arch's 2014 presentment didn't strictly comply. Neither did the 2015 attempt. The Bank promised to honor a sight draft, and Arch's agent didn't present one with the original letter. № 50-18 at 15, 21–22 (deposition pagination). Arch couldn't assume the Bank still held the failed 2014 sight draft some three-plus months after receiving it.

Notwithstanding the lack of strict compliance, Arch's third argument carries the day. The controlling New York law required the Bank to do one of three things within seven business days of receiving a presentment: honor it; accept a draft (if the letter provided for delayed honor); or "give notice . . . of discrepancies in the presentation." N.Y. U.C.C. Law § 5-108(b). Not following this law has consequences: the Bank "is precluded from asserting as a basis for dishonor any discrepancy if timely notice is not given . . . ." N.Y. U.C.C. Law § 5-108(c). The Bank doesn't argue that it timely raised the now-asserted discrepancies. It didn't. The Bank's first refusal came too late and raised different objections. № 49-1 at 34. Instead, the Bank now contends there were none to raise, "because no draw was actually made pursuant to the plain terms" of the letter. № 60 at 3. But it's beyond dispute that Arch tried

to present the letter of credit; the differences between Arch's attempt and the letter's terms — such as the missing original in December 2014 and the missing sight draft in April 2015 — were discrepancies. *Ladenburg Thalmann & Co. Inc.*, 128 A.D.3d at 41. Having failed to raise these imperfections then, the Bank has forfeited them, and can't avoid honoring the letter now by belatedly asserting Arch's imperfect presentations "as a basis for dishonor[.]" N.Y. U.C.C. Law § 5-108(c).

The Bank hasn't responded to Arch's request for 9.0% prejudgment interest from the December 2014 dishonor. № 40 at 7. Arch is entitled to be made whole for the delay in payment. N.Y. U.C.C. Law § 5-111(d); N.Y. C.P.L.R. § 5004. Because Arch hasn't suggested that the Bank should reasonably have raised any discrepancies sooner than seven business days from receipt, interest will run from the outside deadline: 31 December 2014. N.Y. U.C.C. Law § 5-108(b).

* * *

No material facts are genuinely disputed. On this record, First Community Bank must pay Arch Specialty the $300,000.00 due on the

irrevocable standby letter of credit, plus interest. Arch's motion for summary judgment, № 39, is granted. The Bank's cross-motion, № 54, is denied.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

23 August 2016